# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Columbus Keith Vanadore, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Nancy Berryhill, Acting Commissioner ) <br> of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No. 5:18-1097-RMG <br><br><br> **ORDER** |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on June 11, 2019, recommending that the Court reverse the decision of the Commissioner and remand the claim to the agency for further administrative action. (Dkt. No. 17). The Commissioner has advised the Court that she would file no objections to the R & R. (Dkt. No. 19). As set forth more fully below, the Court reverses the decision of the Commissioner and remands with instructions to award benefits from November 23, 2012.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which

specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . . treating sources" based on the view that "these sources are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner "[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996).

The opinions of non-examining sources and state agency medical consultants must be weighed under the same standards of the Treating Physician Rule, including the source's "medical specialty and expertise . . ., the supporting evidence in the case record, supporting explanations . . . and other factors relevant to the weighing of opinions." *Id.* §§ 404.1527(e)(2)(ii). The Commissioner further pledges that the opinions of non-examining sources will be evaluated on "the degree to which these opinions consider all the pertinent

evidence . . ., including the opinions of treating and other examining sources." *Id.* §§ 404.1527(c)(3).[1]

It is well-settled in this Circuit that "medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability before the claimant's DLI." [2] *Bird v. Commissioner of Social Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). As the *Bird* court explained, "post-DLI medical evidence generally is admissible in a SSA disability determination in such instances in which the evidence permits an inference of linkage with the claimant's pre-DLI condition." *Id.* at 341.

## Factual Background

This is the second appeal in this claim to come before the Court. Plaintiff asserts an onset date of March 31, 2009, and his date last insured was December 31, 2014. Tr. 671, 673. In the initial appeal, the record was somewhat complicated by the fact that the Plaintiff, due to the lack of insurance and personal resources, had no regular treating physician and received the limited medical care he did obtain from a free medical clinic and at local emergency rooms. These records documented complaints of chronic neck and back pain, as well as chronic wrist pain and depression. The Social Security Administration referred Plaintiff for an examination by Dr. Harish Mangipudi, a regular Social Security examiner, to obtain a comprehensive assessment of the claimant's capacity to function in the workplace. In his examination of

---

[1] The Commissioner has given notice that she intends to repeal the Treating Physician Rule for all cases filed after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 2017 WL 168819 (January 18, 2017). Since Plaintiff filed this claim on November 14, 2012, the Treating Physician Rule is in full force and effect.

[2] "DLI" stands for "date last insured."

February 16, 2013, Dr. Mangipudi documented Plaintiff's history of chronic low back, cervical and shoulder pain following a motor vehicle accident two years earlier. Plaintiff's neck pain was described as "sharp stabbing" and back pain as "dull, throbbing." Dr. Mangipudi documented that Plaintiff "is not able to ambulate without being in pain, unable to bend due to pain, unable to squat due to pain, able to sit for 30 minutes then has to readjust." Tr. 392. He noted that Plaintiff could ambulate without assistance but his gait was abnormal and "was unable to bend and squat without difficulty." He also documented the presence of cervical and low back paraspinal tenderness. Tr. 393.

Dr. Mangipudi conducted a physical assessment of Plaintiff using the American Medical Association Guide to the Evaluation of Permanent Impairments and found significant abnormalities in the flexion and rotation of the cervical spine, flexion and extension in the lumbar spine, abduction, elevation and rotation of the shoulder, and flexion and deviation of the wrist. Tr. 395. He concluded, based on "today's examination and objective evidence gathered from the Social Security disability file, that Plaintiff is "unable to stand for a full workday" but was "able to sit for a full work day." Tr. 394.

The Administrative Law Judge ("ALJ") found in the initial decision in this case that although Plaintiff had multiple severe mental and physical impairments, including degenerative changes in his lumbar spine without herniation, lower back muscle strain, cervical spondylosis, carpal tunnel syndrome, anxiety disorder, and depression, he retained the residual functional capacity to perform less than the full range of light work. Tr. 58, 61. On appeal, this Court noted the narrow difference between the parties, with the Commissioner arguing that Plaintiff could still perform light work (at less than full scope) and the Plaintiff arguing that he was

limited to sedentary work. This was noted by the Court to be a critical difference since if Plaintiff could not perform light work (most relevant here being unable to stand 6 hours in an eight hour day), he would be rendered disabled under Social Security regulations from the time of his fiftieth birthday, on November 23, 2012. (Dkt. No. 22 at 7).

In order to reach the conclusion in the first administrative decision that Plaintiff was capable of performing light work, it was necessary for the ALJ to disregard the findings and opinions of Dr. Mangipudi, the testimony of the Plaintiff, and notes and findings related to Plaintiff's back and neck abnormalities in the administrative record. The Court found that the ALJ's evaluation of Dr. Mangipudi's records and opinions was "replete with error," noting that he had failed to give any weight to Dr. Manipudi as an examining physician, ignored supporting evidence of Dr. Mangipudi's opinion in his examination and office notes, and had basically substituted his medical opinion for that of Dr. Mangipudi. (*Id.* at 9). The ALJ was instructed on remand to evaluate Dr. Mangipudi's opinions in accord with the Treating Physician Rule "without cherry picking or 'playing doctor' where there may be disagreement with a physician's opinions." (*Id.* at 9-10).

The Court further directed the ALJ on remand that Dr. Mangipudi be communicated with to have him specify the number of hours Plaintiff could stand in a normal workday. Since Dr. Mangipudi was an experienced disability evaluator for the Social Security Administration, it was obvious to the Court that his opinion that Plaintiff could not stand for a normal workday meant, at least, that he could not sustain the light work of standing six hours in an eight hour workday, but it was unclear if his opinion included an incapacity to stand less than two hours, disqualifying Plaintiff from even sedentary work. (*Id.* at 22 n.1).

Following remand, Plaintiff submitted to the Social Security Administration various office records and an opinion letter from a treating physician, Dr. Hui Tzu Marie Kiang of Anderson Family Medicine. These records revealed that Plaintiff was under the management and care of Dr. Kiang from March 19, 2015, which was less than three months following the Plaintiff's DLI. Dr. Kiang documented, in an April 17, 2015 examination, that Plaintiff's complaints of chronic neck and back pain dated from his 2011 motor vehicle accident and found diffuse back, neck and shoulder pain and tenderness in all of these regions. Tr. 967, 970. In a letter to the Social Security Administration dated November 1, 2017, Dr. Kiang opined that Plaintiff "cannot engage in anything more than sedentary work" and would require periodic rests during the day to perform even at that level. Dr. Kiang stated that Plaintiff suffered from chronic back pain, lower extremity radiculopathy and weakness, and his MRI showed evidence of multi-level degenerative disease. Tr. 1076.

Further, despite the clear instruction of this Court to follow up with Dr. Mangipudi, the ALJ elected to disregard the Court's directive. When Plaintiff on appeal noted this failure to follow a judicial order, the Commissioner argued that the agency had no duty to obey the Court's instructions because a previous agency regulation requiring follow up with treating physicians was repealed in 2012. (Dkt. No. 13 at 21). The Court's order did not rely on the repealed regulation, but on the Court's inherent power to remand with instructions, long-recognized in this circuit. *See Radford v. Colvin*, 734 F.3d 288, 294-95 (4th Cir. 2013).

The ALJ issued his second opinion in this case, again finding that Plaintiff could perform less than the full scope of light work. In reaching this conclusion, Dr. Mangipudi's opinions were rejected as "vague," a rather stunning approach after the Court directed the ALJ to follow

up with Mangipudi and the ALJ's choice to ignore the clear Court directive. Tr. 690. The ALJ also rejected the opinions of the treating physician, Dr. Kiang, noting that the treatment did not commence until several months after the Plaintiff's DLI. Tr. 687, 688. The ALJ further found the Plaintiff's testimony not credible, relying on his own assessment of the opinions of the treating and examining physicians and the brief summary conclusions of two chart reviewing non-examining physicians that Plaintiff could stand six hours in an eight hour day. It is from this order Plaintiff now appeals.

## Discussion

1.  <u>The ALJ's conclusion that Plaintiff could stand six hours in an eight hour day, and thus meet the standards for light work, is not supported by substantial evidence</u>.

A claimant able to perform light work must have the capacity to stand and walk six hours in an eight hour day, and the need to perform a great deal of standing and walking is "the primary difference between sedentary and most light jobs." SSR 83-10, 1983 WL 31251 at *5-6 (1983). Where a claimant, such as Plaintiff, is unable to perform his past relevant work and has no other transferable skills, a limitation to sedentary work renders a person fifty years or older disabled under controlling Social Security regulations. 20 C.F.R. Part 404, Subp. P., App. 2, §§ 201(g), 201.09.

Plaintiff has consistently asserted that his chronic severe neck and back pain prevents him from standing for any sustained period of time and requires him to lay down regularly during the day to tolerate the pain associated with any activity. Tr. 89-94, 714. In Dr. Mangipudi's examination of February 16, 2013, he documented significant abnormalities in Plaintiff's cervical and lumbar spine, abnormal gait, diffuse tenderness in his neck and back, and an

inability to bend and squat without difficulty and pain. Dr. Mangipudi concluded that Plaintiff did not have the capacity to stand and walk for a full workday, which reasonably indicated to the Court that, at a minimum, Plaintiff could not stand six hours in an eight hour workday. Tr. 392-95.

Dr. Kiang commenced treatment of Plaintiff shortly after the DLI and reached similar conclusions, noting in an April 17, 2015 office visit diffuse chronic back and neck pain and tenderness, which related back to a 2011 motor vehicle accident. Tr. 966-970. In a letter from November 1, 2017, Dr. Kiang diagnosed Plaintiff with chronic back pain, noted findings on a MRI of multi-level degenerative disease, and concluded "he cannot engage in anything more than sedentary work." Dr. Kiang further concluded that the "long term prognosis of [claimant's] symptoms to be poor and permanent." Tr. 1076.

In addition to the examining and treating records of Dr. Mangipudi and Dr. Kiang, the administrative record includes a MRI report of November 15, 2011 showing degenerative changes at multiple levels without herniation; a physical therapy note of January 16, 2012 noting increased lumbar spine pain with standing, flexion and forward bending, positive straight leg raises documented on September 5, 2013, October 3, 2013, and July 10, 2014; and a plain film of the cervical spine of October 1, 2012 showing nerve impingement from C4-C7. (Tr. 350, 362, 374, 467, 484, 552).

The only medical opinion evidence in the record offering a contrary view regarding Plaintiff's capacity to stand and walk six hours in an eight hour day comes from two non-examining chart reviewing physicians. Tr. 127-29, 146-149. Neither provides more than a few sentences regarding their opinion that Plaintiff could stand six hours per day (mostly

repeating the contrary opinion of Dr. Mangipudi), and they completed their reviews in mid-2013, denying them any access to the office notes and opinion letter of Plaintiff's treating physician, Dr. Kiang. Under the Treating Physician Rule, the opinions of non-examining physicians must be weighed under the same standard as those of treating physicians (treatment history, examining history, specialization, supportability of opinions, etc.) and the degree to which they have considered the opinions of the treating physicians. §§ 404.1527(e)(2)(ii), 404.1527(c)(3). The ALJ made no such analysis and failed to note that the chart reviewers had not considered the records and opinions of the treating physician.

Under a standard application of the Treating Physician Rule, this should be an easy case. The treating physician, along with an examiner assigned by the Social Security Administration, reached consistent opinions about Plaintiff's persistent and severe back and neck pain that substantially impaired his capacity to sustain consistent walking and standing. These medical opinions were supportive of the testimony of the claimant and various findings in his medical record from emergency room visits and notes from a free medical clinic. The only contrary evidence came from persons who never laid eyes on Plaintiff and only reviewed a portion of the record before the Court.

The ALJ turned the Treating Physician Rule on its head, giving the greatest weight to the least informed medical opinions and giving essentially no weight to the treating and examining physicians. To counter this great body of evidence, the ALJ substituted his medical opinion for those of the treating and examining physicians. He dismissed the examining physician, who regularly is retained by the Social Security Administration to conduct such examinations, by cherry picking certain normal findings in the report and concluding that they render the

examiner's opinions fatally flawed. The problem with this approach, already addressed in the Court's first order, is that the weighing of the history, examination findings, and objective medical evidence is an exercise of medical judgment, and the ALJ is doing nothing more than "playing doctor" by reweighing the same evidence and reaching a different conclusion, something this Court and the Fourth Circuit have admonished ALJs about in the past.[3] *Lewis v. Berryhill*, 858 F. 3d 858, 869 (4th Cir. 2017); *Hill v. Colvin*, 807 F. 3d 862, 868 (7th Cir. 2015); *Cohen v. Berryhill*, 272 F. Supp.3d 779, 782 (D.S.C. 2017).

The ALJ also contends, once again, that since Plaintiff assists his disabled, wheel chair-bound wife, he surely cannot be disabled. The record shows that Plaintiff has the active assistance of his daughter in rendering care to his wife, who performs most of the household chores and does all of the significant shopping. Tr. 142, 715. Even with this assistance, Plaintiff, out of necessity, does have to help his wife with transfers, and this surely does his chronic back condition no good. Tr. 398, 405, 467.

The ALJ does not explain how Plaintiff's devoted care for his disabled wife disproves the claim he cannot stand six hours in an eight hour day. The rejection of the opinions of the treating and examining physicians on this basis hardly constitutes "good reasons" for rejecting

---

[3] The ALJ noted at least twice that Dr. Kiang did not examine Plaintiff until after the DLI. Tr. 687, 688. As previously noted, the Fourth Circuit has ruled that such post-DLI evidence may be considered where there is linkage to medical conditions during the relevant time period. *Bird v. Commissioner of Social Sec. Admin.*, 699 F.3d at 340. In this case, Dr. Kiang's treatment began less than three months following Plaintiff's DLI, and he noted that the condition he was treating dated back to a motor vehicle accident in 2011. Tr. 970. Consideration of such evidence was required by the ALJ, and was strongly supportive of the prior opinion evidence of Dr. Mangipudi, which the ALJ had rejected supposedly because it lacked other support in the record.

their medical opinions. Moreover, as this Court noted in its earlier order, the disqualification of a claimant from disability because he does what he can to help his disabled wife violates any sense of elemental decency, and it is unseemly for an agency founded to provided assistance to the disabled to make such an argument.

Taking the record as a whole and applying the standards of controlling Social Security regulations and rules, the Court finds there is not substantial evidence in the record to support the finding that Plaintiff can stand and walk six hours in an eight hour day. Consequently, the finding of the ALJ that Plaintiff can perform light work is not supported by substantial evidence, mandating the reversal of the Commissioner's decision in this matter.

> 2. The ALJ failed to consider the combined effect of Plaintiff's multiple physical and mental impairments.

The Fourth Circuit has held that "it is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render the claimant unable to engage in substantial gainful employment." Thus, the agency is obligated to "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

The Plaintiff has numerous severe physical and mental impairments, impacting on his capacity to stand, walk, and use his upper extremities, as well as causing him to struggle with depression and anxiety. The ALJ at Step Four addresses each of these severe impairments separately, but never considers the combined effect of these very significant conditions on his capacity to sustain work. Common sense tells us that a person struggling with severe pain when he stands or walks for any sustained period of time who also has severe elbow and wrist pain, anxiety and depression, might confront serious problems sustaining work and be absent on

an excessive number of days. This was certainly the opinion of Dr. Kiang, who opined that Plaintiff would be absent more than three days per month "to go to his doctor appointments and for recovery from his ongoing symptoms of pain, anxiety/depression." Tr. 1076. The Vocational Expert testified that such absences would render Plaintiff disabled in the competitive job market. Tr. 728.

The failure of the ALJ to consider and address the combined effects of Plaintiff's multiple severe mental and physical impairments at Step Four constitutes a second and independent basis for reversal of the decision of the ALJ.

3. <u>The ALJ's failure to follow the Court's instructions on remand to communicate with Dr. Mangipudi to obtain further clarification of his opinions constitutes defiance of this Court's orders that will not be tolerated.</u>

This Court instructed the ALJ on remand to communicate with Dr. Mangipudi, a regular Social Security examiner, to obtain clarification regarding the number of hours Plaintiff could stand and walk in a regular workday. It was apparent to the Court from Dr. Mangipudi's report that he would state, at a minimum, that Plaintiff could not stand and walk six hours in an eight hour day, but wondered whether he would go further and state that Plaintiff could not stand and walk two hours per day, rendering him disabled even from sedentary work. For reasons not addressed in the record, the ALJ chose to ignore the Court's instruction. On appeal, the Commissioner argued that the agency was free to ignore this Court's order since a previous regulation mandating follow up with a treating physician (without any Court instruction) had been repealed in 2012. (Dkt. No. 13 at 21-22 n.4).

It is well settled in this Circuit that a district court may reverse a decision of the Commissioner with instructions. *Radford v. Colvin*, 734 F. 3d 288, 294-95 (4th Cir. 2013).

Further, the ALJ has a duty to develop a "full and fair record" and to correct gaps and deficiencies in the record where such evidence is necessary to a fair determination of the claim. *Thompson v. Sullivan*, 933 F. 2d 581, 585-86 (7th Cir. 1991); *Fogle v. Berryhill*, C.A. No. 9:17-1503-RMG, 2018 WL 3727359 at *3 (D.S.C. 2018); *Rivera v. Astrue*, C.A. No. 10-4324-RJD, 2012 WL 3614323 at *12 (E.D.N.Y. 2012).

If the agency is displeased with an order of this Court, it may file an appeal. An ALJ is not permitted to selectively follow the orders of this Court, defying those that do not suit him. Such conduct will not be tolerated in the future and will result in a hearing to address sanctions.

## Remedy

This Court's general practice is to remand decisions to the Commissioner for further administrative action, but it is well-settled that the a district court has the authority to award benefits. 42 U.S.C. § 405(g). An award of benefits by a district court is appropriate where the record is fully developed and it is clear the Commissioner would be required to award benefits on remand. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001); *Williams v. Comm'r of Soc. Sec.*, 104 F. Supp 2d 719, 721 (E.D. Mich. 2000). This is particularly true where there has been a significant lapse of time in the administrative processing of this claim.

Plaintiff filed this claim on November 14, 2012, and it has been pending now for over six and half years. The record plainly establishes there is not substantial evidence to support the finding that Plaintiff is capable of performing light work. Further administrative processing will serve no useful purpose.

The legal standard for establishing disability changed for Plaintiff on November 23,

2012, when he became fifty years of age. Under Social Security regulations, when he turned fifty, Plaintiff became an "individual approaching advanced age." An individual approaching advanced age who is limited to sedentary work, cannot perform his past relevant work, and has no transferable skills, is deemed disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00(g), 201.09. During the period prior to his fiftieth birthday, a limitation to sedentary work would not render Plaintiff disabled. Consequently, the Court finds that Plaintiff is entitled to an award of disability as of November 23, 2012, with a back award running from that date.

## Conclusion

Based on the foregoing, the Court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the agency with instructions to award benefits from November 23, 2012.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Judge

July 8, 2019
Charleston, South Carolina